UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DANIEL C. STOVALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00025-JRO-MJD |
| | ) | |
| DR. BYRD, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Daniel Stovall, pro se, alleges in this 42 U.S.C. § 1983 lawsuit that Defendant Dr. Samuel Byrd ("Dr. Byrd") violated his Eighth Amendment rights and committed medical malpractice by failing to provide adequate medical care for his knee injury. Dkt. 32. Dr. Byrd has moved for summary judgment on the constitutional claim. Dkt. 69. For the reasons explained below, the Court **GRANTS** Dr. Byrd's motion, dkt. [69], and **ORDERS** the parties to show cause why the Court should not relinquish supplemental jurisdiction over the state law claim.

## I.    SUMMARY JUDGMENT STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565,

572–73 (7th Cir. 2021).   It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant.  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing particular parts of the record, including depositions, documents, or affidavits.   Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

### III. FACTUAL BACKGROUND

Because the Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Stovall and draws all reasonable inferences in his favor.  *Khungar*, 985 F.3d at 572–73.

Stovall is in the custody of the Indiana Department of Correction.  At all times relevant to this lawsuit, Stovall was incarcerated at Wabash Valley

2

Correctional Facility ("Wabash Valley"). Dr. Byrd is a medical doctor who has been licensed to practice medicine in the State of Indiana since 2004. Dkt. 69-1 ¶ 3. At all times relevant to the lawsuit, Dr. Byrd worked as a physician at Wabash Valley. *Id.* ¶ 4.

On November 3, 2023, Stovall submitted a healthcare request form stating that he slipped and fell sideways, "like sliding in a baseball game." Dkt. 69-2 at 1. He stated, "I got up real fast and that's when I notice a bone on the side of my knee was sticking out. I grabbed my knee with both hands and push the bone back in. Now I am having extremely bad pain in my knee and ankle on my right leg." *Id.* (as written).

On November 5, a nonparty nurse assessed Stovall, who reported to the nurse that his "bone was sticking out." *Id.* at 2; dkt. 69-1 ¶ 7. The nurse noted swelling, decreased range of motion, and weakness. She called Dr. Byrd, who ordered an X-Ray based on the nurse's reported assessment. Dkt. 69-1 ¶ 7; dkt. 69-2 at 5. The nurse also applied an ACE wrap to Stovall's right knee and instructed him to use ice and cool compresses. *Id.* at 4. Stovall had the X-Ray on November 7. *Id.* at 6. The radiologist reported that "there is no evidence of acute fracture, dislocation, or osseous lesion . . . [t]he adjacent soft tissues appear unremarkable, with no evidence of joint effusion." *Id.* The overall impression was "normal knee." *Id.*

Two days later, on November 9, Stovall submitted a healthcare request form complaining of continuous right knee pain due to the fall and his bone popping out. *Id.* at 7. A nurse reviewed Stovall's X-Ray results with him on

3

November 9, and a few days later another nurse assessed his right knee.  *Id.* at 7–9.  The nurse advised Stovall to continue wearing the ACE wrap, to avoid heavy lifting, to use ice, to elevate his leg, and to perform knee exercises.  *Id.* at 10–11.

On November 24, Stovall submitted another healthcare request form complaining about ongoing knee pain in both legs and requesting an MRI.  *Id.* at 12.  The responding nurse referred him for a visit with the medical provider, Dr. Byrd.  *Id.*  After not seeing Dr. Byrd, Stovall submitted another healthcare request on December 16, complaining about his knee injury and asking for an MRI because the ligaments on both knees were injured.  *Id.* at 13.

On December 19, Dr. Byrd examined Stovall.   The medical record submitted by Dr. Byrd states that Stovall complained about pain in his right knee after slipping and landing with his right knee flexed and hip externally rotated.  *Id.* at 14.  Dr. Byrd wrote that it seemed unlikely that a bone popped out because the initial X-Ray did not show an acute fracture.  *Id.*  Dr. Byrd also reported that "[p]ain is described as aching at rest to sharp with activity as minimal as walking.  He denies improvement with RICE [*i.e.*, rest, ice, compress, and elevate] measures, ACE bandage, or HEP [a home exercise program consisting of physical exercises/stretching]."  *Id.*; Dkt. 69-1 ¶ 9.

Dr. Byrd's physical examination of Stovall's right knee did not reveal any abnormalities. Dkt. 69-2 at 15–16; Dkt. 69-1 ¶ 9.  Stovall had normal alignment, no swelling, no effusion (fluid build-up), no ecchymosis (bruising), and no atrophy. Dkt. 69-1 ¶ 9.  Dr. Byrd noted that he suspected lateral displacement of the patella, but that was unclear.  *Id.*  Since his initial x-rays were negative,

Dr. Byrd ordered an X-Ray of the left knee for comparison. *Id.*; *see* dkt. 69-2 at 18. Dr. Byrd also prescribed the steroid dexamethasone to relieve the inflammation of the patellofemoral complex. Dkt. 69-1 ¶ 9; Dkt. 69-2 at 16. Dr. Byrd told Stovall to notify medical if he did not get any relief from the dexamethasone. Dkt. 69-1 ¶ 9. Dr. Byrd noted that depending on further findings, he may consider an intraarticular injection. *Id.*; Dkt. 69-2 at 16.

On December 22, 2023, Stovall had X-Rays of the left knee, which revealed a normal knee. Dkt. 69-2 at 19. The radiologist reported that the images showed mild arthritic changes in the patella without acute bony injury and normal soft tissue. *Id.* at 20; Dkt. 69-1 ¶ 10.

Dr. Byrd continued to treat Stovall after December 2023 for unrelated issues, but Stovall did not complain about his knees. Dkt. 69-1 ¶ 11. Dr. Byrd determined that Stovall did not require any additional treatment for his knee based on his physical assessment, Stovall's subjective report of the injury and complaints, and the two X-Ray reports. *Id.* Dr. Byrd determined that an MRI was not needed because of the negative X-Ray results. *Id.* If Stovall had continued to complain about knee pain, Dr. Byrd would have considered further diagnostic imaging. *Id.* Nevertheless, based on his lack of continued complaints, Dr. Byrd assumed his knee issues resolved. *Id.*

## IV. DISCUSSION

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*,

314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021).  "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'"  *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 662 (7th Cir. 2016)).

Dr. Byrd argues that Stovall has not carried his burden of providing evidence showing that he suffered from an objectively serious condition or that Dr. Byrd consciously disregarded Stovall's knee injury.  Dkt. 71.  Instead, the record shows that Dr. Byrd ordered diagnostic tests and then used his professional judgment to determine that, due to the lack of apparent injury, Stovall did not need an MRI or any additional treatment.  *Id.* at 11–12.  Stovall did not designate any admissible evidence to dispute Dr. Byrd's version of events.  Dkt. 75.  Instead, Stovall responded that Dr. Byrd's testimony contains errors and that Dr. Byrd displayed deliberate indifference because he knew that Stovall had tissue damage, not damage to his bones.  *Id.* at 1.  Thus, Stovall argues that the X-Rays could not properly assess his injuries and that he needed an MRI.  *Id.* at 2–3.

Stovall has not carried his burden of pointing to admissible evidence showing that there is a dispute of material fact precluding summary judgment.

6

Because the Court agrees that the record does not allow a reasonable jury to infer deliberate indifference from Dr. Byrd's actions, the Court only discusses the subjective component of the Eighth Amendment standard.

To avoid summary judgment, the record must allow a reasonable jury to conclude that Dr. Byrd "consciously disregarded a serious risk to [Stovall]'s health." *Dean*, 18 F.4th at 241. Because medical professionals rarely admit that they consciously disregarded a prisoner's serious medical condition, "deliberate indifference must be inferred from the propriety of their actions." *Id.* (internal citations omitted).

The Seventh Circuit held that deliberate indifference can be inferred when the defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

In general, courts must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional

7

would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

In this case, Stovall has not designated any evidence countering Dr. Byrd's judgment or showing that it was unreasonable or departed substantially from accepted practices. Indeed, Dr. Byrd's actions demonstrate that he thoroughly assessed Stovall's injury using physical examination and X-Rays, tried conservative measures such as compression, mobility exercises, and rest, and then ordered additional X-Rays and medication when these measures did not seem to be working. After Stovall stopped complaining about knee pain, Dr. Byrd assumed that the issue had been resolved. This is quite the opposite of persisting in a course of treatment that Dr. Byrd knew to be ineffective or deliberately choosing an easier treatment without using professional judgment.

No reasonable jury could conclude that Dr. Byrd's decision to forgo an MRI amounted to deliberate indifference. Stovall described the injury in his healthcare request forms and to Dr. Byrd and the nurses as affecting the bone in his right knee. Only later did Stovall begin to complain about tissue damage in both knees. Nevertheless, Stovall has not produced any evidence that an MRI would prove to be a more effective diagnostic tool. Nor has he designated admissible evidence showing that Dr. Byrd's failure to order an MRI worsened his condition or caused further injury. In fact, the record does not contain any complaints about knee pain after December 2023. Dr. Byrd testified that even though he continued to treat Stovall, he did not receive any additional complaints about his knees. *See* dkt. 35-1; Dkt. 69-2; Dkt. 69-1 ¶ 11. Stovall

8

has merely shown that he disagrees with Dr. Byrd's treatment decisions, which does not show deliberate indifference. *Pyles v. Fahim,* 771 F.3d 403, 411 (7th Cir. 2014) (an inmate's "'disagreement with a doctor's medical judgment is not deliberate indifference.'" (quoting *Edwards v. Snyder,* 478 F.3d 827, 831 (7th Cir. 2007)); *see also Walker,* 940 F.3d at 965 (explaining that inmates are "not entitled to demand specific care . . . and medical professionals may choose from a range of acceptable courses based on prevailing standards in the field") (internal quotations and citations omitted).

In sum, Stovall has not designated evidence allowing a reasonable jury to find that Dr. Byrd was deliberately indifferent to his knee injury. Therefore, Stovall has not produced evidence to establish an essential element of his Eighth Amendment claim. The Court **GRANTS** summary judgment for Dr. Byrd.

## V. STATE LAW CLAIM

With Stovall's constitutional claim against Dr. Byrd staged for dismissal, the Court has discretion whether to exercise supplemental jurisdiction over his remaining state-law medical malpractice claim. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is entirely discretionary."). "Indeed, when the federal claims are dismissed before trial, *there is a presumption* that the court will relinquish jurisdiction over any

9

remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (emphasis added).

When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation marks and quoted authority omitted).

In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Sharp Elecs. v. Metro. Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (internal quotation marks and quoted authority omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (internal quotation marks and quoted authority).

No circumstance in this case overcomes the presumption that the Court should relinquish jurisdiction over Stovall's state-law medical malpractice claim.

10

For one, the statute of limitations is not a factor. Both federal and state law toll the relevant limitation period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998); *Eads v. Community Hosp.*, 932 N.E.2d 1239, 1243–44 (Ind. 2010). Second, the Court has not expended significant resources on the pending state-law claims. Indeed, the parties did not even brief the medical malpractice claim in their summary judgment filings. Further, it is not absolutely clear how the state-law claim, based on application of Indiana medical malpractice law, should be resolved. Finally, comity always favors allowing state courts to decide issues of state law.

Thus, having resolved all claims within its original jurisdiction, the Court intends to exercise its discretion and relinquish supplemental jurisdiction over Stovall's state law claim. However, because the parties did not address the medical malpractice claim, the Court will not dismiss the claim without prejudice yet. Instead, the parties are ordered to show cause why the Court should not relinquish jurisdiction over the medical malpractice claim by **September 4, 2026**. *See* Fed. R. Civ. P. 56(f). **If the parties do not respond by the deadline, the Court will dismiss the medical malpractice claim without prejudice and direct the clerk to enter final judgment**.

## VI.  CONCLUSION

The Defendant's motion for summary judgment, dkt. [69], is **GRANTED**. Partial final judgment shall not issue at this time.

11

The parties are hereby **ORDERED** to show cause why the Court should not relinquish supplemental jurisdiction over the state law claim by **September 4, 2026.** If the parties do not respond by the deadline, the Court will dismiss the medical malpractice claim without prejudice and direct the clerk to enter final judgment.

**SO ORDERED.**

Date: 8/6/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

DANIEL C. STOVALL
961380
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jeffrey Nicholas Harkey
Sandberg Phoenix & von Gontard
jharkey@sandbergphoenix.com

Timothy Charles Sansone
Sandberg Phoenix & von Gontard
tsansone@sandbergphoenix.com